**95 WEST CORPORATION, Plaintiff-Appellant,**

**v.**

**GENERAL INSURANCE COMPANY OF AMERICA, a *Corporation, and Assurance* Company of America, a Corporation, Defendants-Respondents.**

**No. 24742.**

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1967.

Rehearing Denied Feb. 5, 1968.

Clem W. Fairchild, Herbert M. Kohn, Kansas City, for plaintiff-appellant; Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel.

Glenn E. McCann, Knipmeyer, McCann & Millett, Kansas City, for defendant-respondent Assurance Co. of America.

John R. Caslavka, Shughart, Thomson & Kilroy, Kansas City, for defendant-respondent General Insurance Co. of America.

MAUGHMER, Commissioner.

In 1962, the plaintiff, 95 West Corporation, began construction of a complex, to be known as the French Market Shopping Center, on the northeast corner of 95th and Metcalf streets in Overland Park, Kansas. On September 2, 1962, it purchased two Builders Risk Fire (and other coverages) insurance policies from defendant companies. On July 18, 1963, fire destroyed some parking lot light fixtures in the original cartons which were stored on the grounds and which were valued at $5,324.47. Plaintiff sued defendant companies for this amount and for penalties. Defendants denied that this particular loss was covered. A jury was waived and the case was tried to the court, the parties agreeing that the facts were not in dispute, and that only questions of law were involved. The court, after hearing the evidence, held in part: (1) the loss was not covered; (2) the provisions of the policies describing coverage were not ambiguous; (3) only the building itself and articles for use in its construction were insured and this did not include the parking lot or items for use in its construction and (4) plaintiff failed to prove the value of the destroyed fixtures or its liability for their loss. Accordingly, judgment was entered for defendants.

The insurance contracts involved were actually procured by Margaret Mary Allen, an insurance broker, who had been authorized to do so by plaintiff. Her arrangement for the purchase of the policies was with a Mr. Charles DeGreef, who was at the time manager of Independent Insurance Agencies, Inc., and in such capacity had authority to write insurance for the defendant companies. The insurance was written approximately coincident with the start of construction. It is what is known as "Builders Risk" and was for the purpose of indemnifying the plaintiff owner for certain losses which might occur during construction. The original coverage totaled $450,000, which was later increased as progress was made in the construction.

The policies, as written, described the insured property as "one story approved roof fire proof building or structure, while in the course of construction, including foundations, additions, attachments, and all permanent fixtures belonging to and constituting a part of said building or structure to be occupied as Shopping Center all while situated northeast corner 95th and Metcalf, Overland Park, Kansas. This policy also covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said building or structure and, when not otherwise covered by insurance, builders' machinery, tools and equipment owned by the Insured or similar property of others for which Insured is legally liable, all forming a part of or contained in said building or structure, temporary structures, or on vehicles, or in the open; only while on the premises described or within 100 feet thereof".

The light fixtures at the time of destruction were within 100 feet of the main building. There is no dispute but that these fix-

tures were to be used to illuminate the parking lot portion of the shopping center or that they were destroyed or irreparably damaged by fire.

On appeal plaintiff makes two assignments of error. It says the court erred in holding that plaintiff failed to prove the value of the fixtures destroyed or that it was legally liable for them. The testimony of Mr. I. I. Ozar, attorney, who drew the contract with Overland Electric Company, was that plaintiff paid $5,324.47 for the fixtures. Canceled checks showing payments of this amount (and other amounts) for replacements were in evidence. Mr. Uri Seiden, architect, testified that he had approved payment for the fixtures. We believe plaintiff produced evidence which was not affirmatively controverted showing that it was entitled to recover for this loss if the same were covered under the policies.

Plaintiff also contends that the court erred in holding that the policies did not cover the parking lot light fixtures which were destroyed by fire. It says this is so for two reasons: (1) the terms of the contracts should be interpreted with their ordinary meaning and in a manner most favorable to the insured, and insists that this would result in coverage; (2) the court should have found the terms and provisions of the policies applicable hereto are ambiguous, which would authorize reception of parol evidence to show the intent of the parties, and that such evidence would show that coverage was intended. A third contention, namely, that these fixtures were to be attached to the main building has apparently been abandoned.

Each side in the hope of upholding its interpretation and in an effort to clarify the intention of the contracting parties, presented oral testimony. Miss Allen, the broker, thought the whole shopping center complex was covered. Mr. Uri Seiden, architect, and other witnesses, said that any and all shopping centers included a large parking area which was an essential and required part thereof.

It was brought out on behalf of defendants that Miss Allen, broker and agent of plaintiff, in her description of the property to be insured, not only said the building was one story with fire proof roof, but that it covered an area of 156,000 square feet, whereas the area of the parking lot was 640,000 square feet and the area of the whole complex approximately 793,000 square feet. Mr. Merle E. Stubbs of the Kansas Inspection Bureau, testified that the rates charged did not cover the parking area and that the rates would have been increased especially for vandalism and extended coverage, (these risks were in the policies but not involved in the fire loss) if the parking area or the whole complex had been included.

■ This being a jury waived case, our scope of review is limited by Section 73.-01(d) V.A.M.R. and a reversal would be justified only if we find the judgment of the trial court was clearly erroneous. Swaringin v. Allstate Ins. Co., Mo.App., 399 S.W. 2d 131, 134.

The policies, as written, covered a one story fire proof building or structure to be occupied as a shopping center. Even though such description is construed most favorably to the insured, did it include the parking area? We think not. In fact, appellant has not really urged this theory or that the parking lot light fixtures were to be attached to the building itself. Is such description of the area or premises insured "ambiguous" as that word is understood and interpreted in insurance contracts? If it is not, then parol evidence explanatory of the intention of the parties is inadmissible and judgment for the defendants must be affirmed.

We look first to Webster's Third New International Dictionary for a definition of the words "building" and "structure". There we are told that a building is: "A thing built; a constructed edifice designed to stand more or less permanently, covering a space of land, usually covered by a roof and more or less completely enclosed by

walls, and serving as a dwelling, store house, factory, shelter for animals, or other useful structure * * * distinguished from structures not designed for occupancy". We find this definition for the word "structure": "The action of building. Something constructed or built. A building of imposing size". The word "structure" is also defined as including the composition and components of natural elements.

■■ "The words in insurance contracts are to be understood according to their ordinary scope and meaning * * *". 13 Appleman, Insurance, par. 7388, page 46. "Ambiguity arises when there is duplicity, indistinctness or uncertainty of meaning". Swaringin v. Allstate Ins. Co., Mo.App., 399 S.W.2d 131, 133. In Swaringin it was ruled that the phrase "uninsured automobile" was one on "which there is no bodily injury liability insurance applicable at the time of accident" was clear and unambiguous. "The word 'ambiguity' means duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument". Tenney v. American Life and Accident Ins. Co., Mo.App., 338 S.W.2d 370, 371. In this Tenney case the policy in large print provided for monthly hospital care cost "not to exceed $150.00". In another place in small print it provided for payment of "actual hospital expenses at a rate not to exceed $150.00 per month". The insurer contended its liability did not exceed $5.00 per day. Against this contention the phraseology used was ruled to be ambiguous and the insurer's contention was denied.

Appellant invites our attention to Webster's definition of a Shopping Center: "A concentration of retail stores and service establishments * * * usually with generous parking space". Also to the opinion in Parker v. The Lewis Grocer Company et al., 246 Miss. 873, 153 So.2d 261. This Mississippi case was an action by a tenant to restrain extension of a shopping center when his lease contained such restriction. It was held that the lease was ambiguous as to just what was included in the phrase "shopping center". In that case, of course, "shopping center" was the phrase used and the phrase that was required to be interpreted. We believe that is not our case.

■ We agree with these conclusions or holdings that a parking lot is part and parcel of a shopping center complex. The difficulty with plaintiff's position in the matter before us is that only a one story fire proof building or structure and articles for use in its construction was insured. The term "shopping center" in the policies is only used to describe the purpose for which the building was to be used. "Shopping Center" was not declared to be a part of the insured premises. It is not only usual and permissive but also required that the use to which the property is to be put be stated. This use, in completed structures at least, determines in part the rates which are fixed by state regulatory agencies. For example, the rate for a multiple family dwelling would be higher than the rate on one designed for single family occupancy. The cost of insurance coverage for a garage where gasoline and automobiles are stored exceeds the cost for a men's furnishing store.

Parking areas have become a modern necessity in most merchandising and in congested apartment dwelling areas. But can it reasonably be said that an insurance policy covering a fire proof building or structure to be used as a bowling alley includes indemnity for destruction by fire or vandalism of the light fixtures or asphalt pavement in the parking area, even though today no bowling alley building would be complete without providing an adequate parking area? Would a fire, vandalism and extended coverage policy on an apartment building of 75 units be construed as covering losses occurring in the parking lot simply because a parking area is essential to such a modern housing unit? We do not think so.

■ Courts are not empowered to rewrite or remake insurance contracts. An ambiguity can exist only in those cases

where the language is susceptible of more than one meaning. Hardy v. Hardy, Cal. App., 135 P.2d 615, 619. Before ambiguity can be found it is essential that there be a reasonable basis for the difference in opinion. London & Lancashire Indemnity Co. of America v. Neil Barron Fuel Co., D.C. Mo., 31 F.Supp. 599, 600.

We believe the policies sued on covered the building or structure and the words "Shopping Center" were used only to describe the use for which the building was intended. The phraseology used plainly and clearly so states. We are further led to this conclusion by the fact that the policies stated that even the fixtures and materials used in the construction of the building itself are not covered unless the loss of them occurred within 100 feet of the building or structure. Such an area would clearly not include all the parking space, much less the 793,000 square feet of the whole shopping center complex. In our opinion the wording as to the property and area covered cannot reasonably be said to connote duplicity, indistinctness or uncertainty of meaning. The coverage description is therefore not ambiguous. It folllows that the judgment of the trial court for the defendants is, in our opinion, the correct judgment, is not clearly erroneous and should be affirmed.

The judgment for defendants is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., CROSS, J., and JOHN M. CAVE, Special Judge, concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.